# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MABEL L. HEREDIA, on behalf of herself
and all others similarly situated,

        Plaintiff,

  v.                                         Case No. 17-C-284

CAPITAL MANAGEMENT SERVICES, L.P.,

        Defendant.

## DECISION AND ORDER GRANTING MOTION TO DISMISS

Plaintiff Mabel L. Heredia, individually and on behalf of all others similarly situated, filed this action against Capital Management Services, L.P. (CMS), alleging that CMS violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*, when it sent a series of letters to Heredia that sought to collect a debt she owed to Discover Bank (Discover) and stated in part: "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form." Am. Compl., ECF No. 32, Exs. B, C, D. Heredia alleges that CMS's use of the statement "Discover may file a 1099C form" is false, deceptive, and misleading in violation of 15 U.S.C. § 1692e and an unfair or unconscionable means of collection in violation of § 1692f. Presently before the court are CMS's motion to dismiss Heredia's first amended complaint for failure to state a claim and Heredia's motion for leave to amend the complaint. For the reasons that follow, CMS's motion to dismiss will be granted and Heredia's motion for leave to amend will be denied.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). While, as a general matter, the confusing nature of a dunning letter is a question of fact that, if well-pleaded, avoids dismissal under Rule 12(b)(6), dismissal is appropriate when it is "apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (citing *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)).

## ALLEGATIONS OF THE AMENDED COMPLAINT

Heredia's claims arise out of a series of letters she received from CMS, who sought to collect a debt she owed to Discover. Heredia's debt arose from one or more transactions for a credit card account that Heredia used primarily for personal, family, or household purposes. After Heredia defaulted and the Debt was charged off, CMS, a debt collector, sought to collect the Debt on Discover's behalf. In its attempt to collect the Debt, CMS sent Heredia four collection letters.

Although Heredia appears to generally allege that each of the four letters violates the FDCPA, *see* ECF No. 32 at ¶ 120, she only alleges that three of the letters violate specific sections of the Act, namely §§ 1692e and 1692f. *See id.* at ¶ 139.

The four letters contain near-identical captions. In the top-right corner of each letter, under CMS's logo, Discover is listed as the "Original Creditor" and "Current Creditor," the "Description" reads "Discover Card," the last four digits of Heredia's account number are listed, and $1,892.43 is listed as the "Amount of Debt." *See id.*, Exs. A, B, C, D. Although the bodies of the letters differ in some respects, each states: "This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector." *Id.*

According to the amended complaint, CMS's first letter, dated October 5, 2016, was the initial written communication mailed to Heredia to collect the Debt. The letter states that "[CMS] has been engaged by DISCOVER BANK to resolve your delinquent debt of $1,892.43." *Id.*, Ex. A. The letter also offers Heredia thirty days after her receipt of the letter to dispute the validity of the Debt or any portion thereof, otherwise CMS will assume the Debt is valid. If Heredia timely files a written notice of dispute, CMS will obtain verification of the Debt or obtain a copy of a judgment and mail Heredia a copy of such verification or judgment. The letter then instructs Heredia to submit her payment by check, money order, or online. Although the amended complaint alleges that the October 5, 2016 letter "fails to disclose how much of the 'Amount of Debt' consists is [sic] principal," *id.* at ¶ 34, the complaint does not allege that such a failure violates a particular provision of the FDCPA.

The second letter, dated November 6, 2016, offers three payment arrangements, or "settlement offers." *Id.*, Ex. B. The offers are as follows:

> A. 29% reduction of [Heredia's] present balance to the amount of $1343.63, if paid in full on or before 11/30/2016. (A savings of: $548.80)
>
> B. 24% reduction of [Heredia's] present balance to the amount of $1438.25. The first payment of $719.13 or more is due on or before 11/30/2016. The second and final payment of $719.12 or more is due on or before 12/30/2016. (A savings of: $454.18)
>
> C. 19% reduction of [Heredia's] present balance to the amount of $1532.87. The first payment of $510.96 or more is due on or before 11/30/2016. The second payment of $510.96 or more is due on or before 12/30/2016. The third and final payment of $510.95 or more is due on or before 1/30/2017. (A savings of: $359.56).

*Id.* After the settlement offers, the letter states: "The amount of money you want to save is in your control" and that, "[i]n addition, upon clearance of these funds, we will provide, upon request, an account paid letter." *Id.* After presenting information on payment arrangements, the letter states: "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form. We cannot provide you with tax advice. If you have any questions, Discover encourages you to consult a tax advisor of your choosing." *Id.*

According to the complaint, "[w]hen, among other required conditions exist, Discover writes off or forgives $600 or more of the principal amount of a debt, it may be required by law to file IRS Form 1099C and to send a copy to obligor." *Id.* at ¶ 47. The complaint alleges that "Discover (like other credit card issuing banks) does not, however, file IRS Form 1099C when the amount of principal forgiven is less than $600." *Id.* at ¶ 48. The complaint further alleges that the settlement offers do not state what amount of principal, if any, is to be written off if Heredia accepts. Because none of the settlement offers involve a savings of $600 or more, the complaint alleges that, principal aside, acceptance of any of the offers would never result in Discover filing a 1099C form, thus making the letter's claim that "Discover may file a 1099C form" false and misleading.

4

CMS's third and fourth letters, respectively dated December 7, 2016, and January 5, 2017, also offer settlements. Other than the settlement offered, the third and fourth letters are identical. The December 7, 2016 letter states: "On behalf of DISCOVER BANK, Capital Management Services, LP is willing to accept less than the full balance due as a settlement on the above mentioned account. The settlement offer shall be $1154.38 due in our office on or before 12/21/2016. We are not obligated to renew this offer." *Id.*, Ex. C. Using the same language, the January 5, 2017 letter offered to settle for $965.14 with a January 19, 2017 due date. *See id.*, Ex. D. After the settlement offers, both letters state: "Upon clearance of sufficient funds, our records will be updated to reflect that the above account has been satisfied." *Id.*, Exs. C & D. Like the other two letters, the third and fourth letters discussed payment arrangements and then stated: "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form. We cannot provide you with tax advice. If you have any questions, Discover encourages you to consult a tax advisor of your choosing." *Id.*

The complaint alleges that the third and fourth letters fail to specify what amount of principal, if any, is to be written off or forgiven if Heredia accepts the settlement offers and that Discover can only file a 1099C form if it forgives principal in the amount of $600 or more. Heredia's proposed Second Amended Complaint that is attached to her motion to amend makes explicit that, on information and belief, the settlements in the third and fourth letters, although offering total reductions over $600, do not reduce the amount of principal by $600 or more. According to the Second Amended Complaint, then, CMS's claims in the third and fourth letters that "Discover may file a 1099C form" were false as well as deceptive and misleading to an

5

unsophisticated consumer given that, under the settlements proposed, Discover could not have filed a 1099C form.

Although Heredia's first amended complaint fails to explicitly state that the settlements in the third and forth letters would not have reduced the principal by $600 or more, I am satisfied that, drawing all reasonable inferences in Heredia's favor, which is required at this stage, *Kubiak*, 810 F.3d at 480–81, Heredia has implicitly made such allegations. Heredia's first amended complaint alleges that CMS's third and fourth letters offered settlements with total reductions exceeding $600, that the letters failed to state what amount of principal, if any, the settlements would forgive, that Discover may only file a 1099C form when it settles a debt and principal is reduced by $600 or more, and that the third and fourth letters were non-truthful, deceptive, and misleading because of their use of "Discover may file a 1099C form." Implicit in these allegations is the suggestion that the settlements contained in the third and fourth letters did not, in fact, offer reductions in principal of $600 or more.

Heredia alleges that the second, third, and fourth letters' inclusion of "Settling a debt for less than the balance owed may have tax consequences and Discover may file a 1099C form" has the effect of increasing the likelihood that she and other similarly situated consumers will pay the full amount of the debt to avoid tax consequences that may arise if Discover files a 1099C form and to avoid having to consult a tax advisor.

Based on these allegations, Heredia asserts that CMS's second, third, and fourth letters were false, deceptive, and misleading in violation of § 1692e and unfair or unconscionable in violation of § 1692f. Heredia seeks an award of actual damages, statutory damages of up to $1,000, and attorneys' fees and costs. Heredia also seeks to represent two classes, one based on the form of the

6

second letter (settlement reductions below $600) and the other based on the form of the third and fourth letters (settlement reductions of $600 or more). If Heredia prevails, each member of both classes would be entitled to statutory damages, not to exceed the lesser of $500,000 or 1% of CMS's net worth for each class. *See* § 1692k.

## ANALYSIS

**A. Unsophisticated Consumer Standard**

The FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In the Seventh Circuit, FDCPA claims, including those brought under §§ 1692e and 1692f, are evaluated under the objective "unsophisticated consumer" standard. *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (citations omitted); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003). Although an "unsophisticated consumer" may be "uninformed, naive, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), such a consumer "has 'rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences.'" *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). "While the unsophisticated consumer 'may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion.'" *Gruber*, 742 F.3d at 274 (quoting *Pettit*, 211 F.3d at 1060). The unsophisticated consumer "is not a dimwit" and is "reasonable," but he does not parse collection letters like a patent

7

lawyer construes a patent. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Turner*, 330 F.3d at 997; *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

**B. FDCPA Claims**

CMS notes at the outset that this action was stayed for several months pending the resolution of the Seventh Circuit's decision in *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762 (7th Cir. 2018), which the parties agreed would likely be dispositive. *Dunbar* was decided on July 19, 2018. In *Dunbar*, the Court of Appeals examined a debt collection letter that "stated the full balance due was $4,049.08 and offered to settle the debt for $2,631.90. The letter contained the following warning: 'NOTICE: This settlement may have tax consequences.'" *Id.* at 764. The court held that, although "[the plaintiffs] were insolvent when they received the letters and therefore would not have incurred a tax liability for any discharged debts," the statement that the settlement "may have tax consequences" was "not false or misleading [under § 1692e] because 'may' does not mean 'will' and insolvent debtors might become solvent before settling their debt, triggering the possibility of tax consequences." *Id.* CMS contends that the court's decision in *Dunbar* controls here and that its motion to dismiss should be granted on the basis of *Dunbar* alone.

Heredia, on the other hand, contends that *Dunbar* is distinguishable. She contends that *Dunbar* merely addressed possible tax consequences to the debtor, not a statement suggesting that a creditor may file a 1099C form. Instead of *Dunbar*, Heredia contends this case is controlled by *Boucher v. Finance System of Green Bay, Inc.*, 880 F.3d 362, 367 (7th Cir. 2018), and *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012), where the court held that a statement is false or misleading if it asserts a particular consequence may occur when in fact it will never occur.

8

It is true that *Dunbar* did not address the IRS reporting requirement at issue in this case. *Dunbar* explicitly noted that, in that case, "the challenged statement says nothing whatsoever about IRS reporting." 896 F.3d at 765. The court thus concluded that the 1099C "reporting obligation has no bearing on this case because the law firm collection letters did not mention IRS reporting." *Id.* at n.2. But even though *Dunbar* did not address the IRS reporting requirement, the reasons underlying the court's decision in that case apply here as well.

First, as already noted, *Dunbar* pointed out that "[a]n unsophisticated consumer would not understand the word 'may' to mean 'will.'" *Id.* Indeed, the court pointed out that its decision in *Taylor v. Cavalry Investment, L.L.C.*, 365 F.3d 572 (7th Cir. 2004), was instructive on this exact point. In *Taylor*, the collection letter at issue stated: "[I]f applicable, your account may have or will accrue interest at a rate specified in your contractual agreement with the original creditor." *Id.* at 574. For one of the plaintiffs in that case, the account continued to accrue interest, but for the other two, the accounts were closed and the creditors could no longer add interest. *Id.* The plaintiffs thus argued in *Taylor*, like Heredia does here, that the statement was false and in violation of the FDCPA because two of the creditors were no longer adding interest on the closed accounts. *Id.* at 575. The court in *Taylor* rejected this argument, calling it "downright frivolous" since "[t]he letter didn't say they would, only that they might." *Id.* Applying the same reasoning to the letter before it, the *Dunbar* court explained:

> Similarly here, it is not misleading to say that a debtor who settles a debt *may* incur a tax liability. The use of the word "may" signals only that tax consequences are possible in the case of some debtors, *not* that tax consequences are possible or likely (much less certain) in *this particular debtor's* circumstances.

896 F.3d at 765–66.

9

This point makes sense. Form letters of the type sent by debt collectors are intended to convey general information that may not apply to every recipient. To require debt collectors to individualize every communication they send to the specific consumer receiving it would significantly increase the costs of collection. It would also result in "burdening the collection industry with a continuing portfolio of litigation that potentially raises the cost of credit for all consumers." *Islam v. Am. Recovery Serv. Inc.*, No. 17-CV-4228, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017). Thus, the use of words and phrases such as "may" or "if applicable" is not unusual. The message of *Dunbar* and *Taylor* is that consumers, even unsophisticated consumers, understand this. *But see Boucher*, 880 F.3d at 367 (holding that dunning letter that states "[b]ecause of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater" is misleading if "late and other charges" cannot legally be added).

On a more fundamental level, however, the court in *Dunbar* rejected not only the plaintiffs' argument that "may" means "shall" to an unsophisticated consumer, but their entire theory of the case. The plaintiffs' theory in *Dunbar*, like Heredia's here, was that, contrary to the explicit terms of the letters, the debt collectors did not actually want the consumer to pay the reduced amount they were offering. Instead, the plaintiffs claimed in *Dunbar*, as Heredia does in this case, that the debt collectors were really trying to induce the consumers to pay the full amount by frightening them over the possible tax ramifications of paying less. 896 F.3d at 766; ECF No. 32 at ¶ 62. *Dunbar* rejected this very argument, stating:

> Further, contrary to the plaintiffs' argument, the tax-consequences warning does not give the false impression that debtors should pay their entire debt to avoid a tax liability. The letters are invitations to settle the debt and are clearly meant to

encourage the debtor to take advantage of the discount offered. A rational debtor knows that income taxes are calculated as a percentage of income, and he would likewise understand that even if the discount counts as taxable income, the benefit would still outweigh the cost. That makes it all the more implausible that the tax-consequences warning would dupe a debtor into paying the full debt amount.

896 F.3d at 766.

In other words, it makes no sense for a consumer to refuse a discount and pay the full amount of a debt out of concern that the amount of the discount might be taxable. Even an unsophisticated consumer, should she consider the statement at all, would realize this. Thus, even if in some technical sense false, the notice of possible tax consequences contained in CMS's letters does not violate §1692e. *See Boucher*, 880 F.3d at 366 ("Even if a statement in a dunning letter is 'false in some technical sense,' it does not violate § 1692e unless it would confuse or mislead an unsophisticated consumer." (citing *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009); *Turner*, 330 F.3d at 995)). As the court explained in *Hahn v. Triumph Partnerships LLC*, a statement must be material in order to violate § 1692e: "The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect). . . . A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." 557 F.3d 755, 757–58 (7th Cir. 2009).

Here, for the reasons explained in *Dunbar*, the tax consequences warning contained in CMS's letters does not give the false impression that Heredia should pay her entire debt to avoid a tax liability. Likewise, whether Discover would or would not file a 1099C is immaterial to whether it was in her interest to accept the discount CMS was offering. CMS's letters therefore do

not violate § 1692e, and since Heredia's claim under § 1692f is based on the same allegations, that claim fails as well.

CMS's motion to dismiss (ECF No. 33) is therefore **GRANTED**. And because Heredia's proposed Second Amended Complaint simply corrects clerical errors and would not cure the fatal flaws identified herein, her motion for leave to file an amended complaint (ECF No. 37) will be **DENIED** as futile. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this   22nd   day of January, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
